IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GWENODA COBB,

     Plaintiff,

vs.                       CASE NO. 1:17-cv-182-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for supplemental security income under Title XVI of the Social

Security Act ("the Act"). (ECF No. 1.) The Commissioner has answered

(ECF No. 17), and both parties have filed briefs outlining their respective

positions. (ECF Nos. 20, 21.) For the reasons discussed below, it is

recommended that the Commissioner's decision be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed her Title XVI application on June 6, 2013, alleging a

disability onset date of January 30, 2013. (R. 156–57.) Her application was

denied initially and upon reconsideration. (R. 77–78, 90–92, 95–98,

102–07.) Following a hearing held on March 29, 2016, an administrative

law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 10–23.) The

Appeals Council denied Plaintiff's request for review. (R. 1–6.) On July 17,

2017, Plaintiff filed the instant appeal. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence

is more than a scintilla, i.e., the evidence must do more than merely create

a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.

Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d

580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (holding that the court must scrutinize the entire

record to determine reasonableness of factual findings); *Parker v. Bowen,*

793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human

Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. §§ 404.1505, 416.905

(2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, she is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. §§ 404.1520(c), 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. §§ 404.1520(e)–(f),

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

416.920(e)–(f). Fifth, if a claimant's impairments (considering her residual

functional capacity ("RFC"), age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is

disabled. §§ 404.1520(g), 416.920(g).

## III.  SUMMARY OF THE RECORD

Because Plaintiff's only argument on appeal relates to the

development of the record regarding her mental health impairments, the

relevant portions of the medical record, opinion evidence, hearing

testimony, and the ALJ's findings are summarized below.

## A.  Medical Evidence

In March 2011 Plaintiff was admitted to the crisis stabilization unit

("CSU") of Meridian Behavioral Healthcare ("Meridian") after being Baker

Acted. Her objective assessment revealed fair appearance, appropriate

manner, mildly agitated motor behavior, normal speech, depressed mood,

tearful affect, and questionable judgment. Her final diagnosis included a

resolving psychosis and a history of alcohol abuse. She was prescribed

Seroquel to address her symptoms. (R. 271–75.)

Plaintiff underwent a psychiatric evaluation at Meridian in May 2011.

The notes reflect that Plaintiff attributed her CSU admission to stress from

the separation from her husband, but she said the medication helped her cope with the stress and stay calm. (R. 249–50.)

Her mental status examination during this evaluation revealed normal findings. She had an appropriate manner, normal motor behavior, normal speech, a good mood, congruent affect, fair insight and judgment, and her cognition was grossly intact. Her diagnoses from this evaluation included adjustment disorder with depressed mood, psychotic disorder (in remission), and rule-out mood disorder and acute stress disorder. The treatment plan included counseling and psychiatric followup, but no psychotropic medication. (R. 251.)

In June 2012 Plaintiff underwent an intake and screening evaluation at Meridian after a court order for mental health evaluation following a charge of Criminal Mischief. Her behavioral observations and current mental status revealed normal findings. No disorder was diagnosed during this visit.  (R. 289–93.)

In November 2012 Plaintiff was admitted to the CSU again for three days after a week of binge drinking and an alleged suicide attempt. Her diagnoses included depression and alcohol abuse.  Her recommended treatment involved medication management, counseling, and substance

abuse treatment. Her objective assessment revealed overall normal findings, including fair appearance, appropriate manner, normal motor behavior and speech, grossly intact cognition, good mood, full range affect, organized thought process, and fair insight and judgment. At the time of her discharge, she was feeling much better and planned to go to Peaceful Paths for help with her abusive relationship. (R. 265–70.)

In December 2012 Plaintiff underwent another intake screening and evaluation regarding her mental health and substance abuse at Meridian after being referred by Child Protective Investigator. During her mental status examination, her dress, posture, eye contact, motor behavior, general attitude, and cognitive function were all normal. Her speech, thought content, thought process, and perception were all unremarkable. Her affect was congruent with her emotions and her mood was unremarkable. Her diagnosis was mood disorder, and the recommended treatment included individual mental health counseling. (R. 276–88.)

Plaintiff then received services from Meridian between January 2012 and May 2013. In January 2013 Plaintiff helped develop a 6-month outpatient treatment plan at Meridian. Her goals included getting a job and learning to drink in moderation. In May 2013, Plaintiff was discharged from

Meridian's Families in Transition program after starting it in December 2012. It was noted that Plaintiff only engaged in a few sessions and then unexpectedly stopped services. The diagnostic impression at the time of discharge was mood disorder. (R. R. 276–88, 294–95.)

Plaintiff underwent an intake screening at the Alachua County Jail at the end of May 2013. Plaintiff was stable at the time of the interview.  She was approved for general population housing and only received a routine mental health referral. She had another intake screening at the end of July, and she was again approved for general population with routine mental health referral. (R. 297–314.)

Also in July 2013 Plaintiff was admitted to CSU again for two days, where she was diagnosed with post-traumatic stress disorder and prescribed Celexa. During an objective assessment, the findings were overall normal. Her appearance was normal, her manner was appropriate, her motor behavior was normal, her speech was normal, her cognition was grossly intact, her mood was "calming down," her affect was tearful at times, her thought process was mostly linear, and her insight and judgment were improving. The recommended treatment involved medication management and counseling.  (R. 259–64.)

Plaintiff returned to the Alachua County Jail in July 2015, where she underwent another intake screening. She was alert and oriented and did not appear in any apparent distress. Plaintiff did not report any mental health complaints although she did report a diagnosis of post-traumatic stress disorder. She returned again in February 2016, and she was again alert, oriented, and in no apparent distress. During this intake screening she reported major depression, bipolar disorder, and schizophrenia. She was approved for general population, and did not receive a mental health referral. Her diagnosis was listed as alcohol dependence, and she experienced a mild withdrawal.

Plaintiff had a followup assessment in March 2016, where she reported only post-traumatic stress disorder. All of her examinations yielded normal and unremarkable findings, and the nurse commented that Plaintiff should work inside only. (R. 331–54.)

## B.  Opinion Evidence

### 1. Keith Bauer, Ph.D.

At the initial level, Dr. Bauer completed a Psychiatric Review Technique. Plaintiff's "A" and "B" criteria included affective disorders, anxiety-related disorders, and substance addiction disorders. He noted that

Plaintiff's restriction of activities of daily living, difficulties in maintaining

social functioning, and difficulties in maintaining concentration,

persistence, or pace were all moderate. And he noted that there was no

presence of "C" criteria. (R. 72–73.)

He also completed a mental residual functional capacity assessment.

He found that Plaintiff was moderately limited in the ability to understand

and remember detailed instructions, the ability to maintain attention and

concentration for extended periods, the ability to carry out detailed

instructions, the ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of rest

periods, the ability to interact appropriately with the general public, the

ability to get along with coworkers or peers without distracting them or

exhibiting behavioral extremes, and the ability to respond appropriately to

changes in the work setting (R. 74–75.)

Overall, he found the following: Plaintiff can understand and recall

simple instructions. Plaintiff can persist at simple and routine tasks for a

regular workday at an appropriate pace and can sustain at this level over

weeks and months. Plaintiff can relate adequately with others in the work

place, and she would work best in an environment in which she had limited contact with the public and limited interpersonal demands. Additionally, she can adapt to most changes and task demands found in a routine work setting on a sustained basis. (R. 74–75.)

### 2. Patricia A. Clark, Psy. D.

At the reconsideration level, Dr. Clark completed a Psychiatric Review Technique. Plaintiff's "A" and "B" criteria included affective disorders, anxiety-related disorders, personality disorders, and substance addiction disorders. She noted that Plaintiff's restriction of activities of daily living and her difficulties in maintaining concentration, persistence, or pace were mild but that her difficulties in maintaining social functioning were moderate. And she noted that there was no presence of "C" criteria. (R. 83.)

She also completed a mental residual functional capacity assessment. She found that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, and the ability to accept instructions and respond appropriately to criticism from supervisors. (R. 86–88.)

Overall, she found the following: Plaintiff has the capacity to understand and retain simple (and most complex) instructions. Plaintiff can produce concentrated effort needed to complete both simple and complex tasks with adequate persistence, pace, and reliability despite some occasional disruption. Plaintiff has some social limitations secondary to mood symptoms, apparent characterological variables, and alcohol abuse, and she would do best in settings with limited social contact and demands. However, her interpersonal issues appear to occur primarily within her intimate relationships. And finally, Plaintiff can adapt over time to the routine demands and changes inherent in the work setting. (R. 86–89.)

### 3. Theresa D. Rodriguez

Plaintiff's therapist, Ms. Rodriguez, wrote two notes regarding her treatment of Plaintiff. She stated that she began seeing Plaintiff in January 2013 and had seen her for sixteen sessions. According to Ms. Rodriguez, Plaintiff suffers from post-traumatic stress disorder and possibly bipolar disorder. (R. 316.)

Ms. Rodriguez stated that prior to July 11, 2013, Plaintiff was lucid and had an appropriate state of mind, but on July 11, 2013, Ms. Rodriguez witnessed psychosis and a state of mania. As a result, she was Baker

Acted since she could not function and was completely irrational for a period of two days. Ms. Rodriguez then said Plaintiff has not recognized her mental illness because she is able to function some of the time. (*Id.*)

According to Ms. Rodriguez, Plaintiff cannot raise her children or work to sustain herself due to her mental illness. In support of this statement, she noted Plaintiff's multiple hospitalizations and involvements with the police due to her aggression when in a state of psychosis. Ms. Rodriguez also stated that Plaintiff needs inpatient treatment and medication. (R. 315–16.)

## C.  Hearing Testimony

At the hearing held on March 29, 2016, Plaintiff was 34 years old and had an associate's degree in nursing. Plaintiff testified that since the alleged onset date of January 30, 2013, she worked for a couple months as a part-time cashier at a drive thru. She testified that she left because of the stress and because her boss said that he could not babysit her anymore (with regard to getting orders correct and doing proper calculations). Her other prior work history involved working as a home health aide, a task group crew member, a daycare worker, a seasonal employee at Target, and as a CNA at Tacachale, a state facility for

behaviorally challenged or mentally ill adults. (R. 35–44, 49.)

Plaintiff testified that her severe mental impairments included effective mood disorder, anxiety disorder, substance addiction disorder, and personality disorder. With regard to how these impairments impact her, she testified that she does not have any physical restrictions. She also has no problem dressing or grooming herself, and she can wash dishes, do laundry, dust, sweep, mop, vacuum, and grocery shop. She testified that she does not like to cook or drive, but she does spend a significant amount of time reading. Additionally, her sister and her aunt come to visit and check on her, and she attends all her family gatherings. (R. 45–49.)

Plaintiff also said she has good and bad days. On her good days she enjoys interacting with others and going out more. She also said that she is not really sad, depressed, or crying on the better days. On her bad days, however, she does not get out of bed. Instead, she just stays in bed and sleeps. She also said that she has three or four bad days a week. (R. 49–50.)

With regard to working, Plaintiff said she does not do well with stressful environments and that these environments impact her ability to take care of herself outside of work. As a result, she said she was not able

to maintain being a parent, working, and taking care of herself. She also had issues with co-workers and supervisors. Additionally, she said that some of her mental health symptoms involve becoming anxious, manic, and nervous as well as experiencing difficulties sleeping. She also stated that she has trouble staying focused and that she can become aggressive toward others. Plaintiff said that her extreme symptoms happen in correlation with life-altering events.  (R. 50–55, 57–58.)

Plaintiff also said that as a result of her mental health impairments, she is unable to care for her children. The State of Florida removed them from her custody in 2011 and she has not tried to regain custody because she knows she cannot perform the tasks they need. (R. 54–55.)

## D.  The ALJ's Findings

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 6, 2013, the application date. Further, the ALJ found that Plaintiff has the following severe impairments: affective disorder, anxiety disorder, personality disorder, and a history of substance addiction disorder. However, none of these impairments, or a combination thereof, meets or medically equals the severity of one of the listed impairments. (R. 12.)

Based on a review of the entire record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with nonexertional limitations. These limitations include avoiding any fast-paced production requirements or quotas and avoiding others, except for occasional, brief, and superficial interaction with supervisors and the general public. (R. 14.)

The ALJ then found that Plaintiff was unable to perform past relevant work. However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found relying upon the testimony from a vocational expert that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Ultimately, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, since July 6, 2013, the date the application was filed. (R. 21–23.)

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to fully and fairly develop the record, particularly with regard to psychological testing. Plaintiff specifically suggests that the ALJ had a duty to reschedule a consultative examination for Plaintiff after it was cancelled due to her incarceration. Ultimately, Plaintiff makes the following conclusory argument without citing any

evidence in the record:

> As set forth above, Plaintiff Cob has had all seven of her children removed from her custody by the State of Florida Department of Children and Families. . . . Thus, the chronic level of Plaintiff Cobb's mental health dysfunction, resulting in the state constitutionally removing seven children from her custody, is obviously extreme. In turn, that substantial evidence reveals a level of mental illness that would also preclude full-time employment.

(ECF No. 20 at 26–31.)[2]

In developing the record, the ALJ must order a consultative examination or obtain medical evidence or expert testimony where the record contains insufficient evidence for the ALJ to make an informed decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). An ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision. *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988); *Kelly v. Heckler*, 761 F.2d 1540, 1540 (11th Cir. 1985).

Further, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that

---

[2] Rather than citing to the record to support the above statement, Plaintiff instead precedes her argument with a lengthy summary of the entire medical record. And then (without citing evidentiary support) makes the blanket statement that substantial evidence shows Plaintiff cannot work.

the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–25 (11th Cir. 1995)). Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A July 1981)).

Plaintiff's says the ALJ should have ordered a consultative mental health examination because the removal of Plaintiff's children by the State of Florida reveals the severity of her mental health impairments and the other substantial evidence shows she cannot work. Plaintiff's argument fails because Plaintiff has not shown that the record contained insufficient evidence for the ALJ to make an informed decision, and because Plaintiff has not demonstrated that the record contains evidentiary gaps resulting in unfairness or clear prejudice.

To the contrary, the ALJ had a wealth of evidence in the record regarding Plaintiff's mental health issues to make an informed decision. First, the ALJ considered and took into account all of the mental health treatment records from Meridian Behavioral Healthcare and from the Alachua County Jail.

The ALJ took into account that in March 2011 Plaintiff was Baker Acted and diagnosed with psychotic disorder. She was prescribed Seroquel to address her mental health symptoms. In May 2011 Plaintiff underwent a psychiatric evaluation, where Plaintiff reported that medication helped her to stay calm and cope with stress. Notably, during this evaluation, Plaintiff's mental status was normal. The diagnoses included adjustment disorder with depressed mood, rule-out psychotic disorder in remission, rule-out mood disorder, and rule-out acute stress disorder. The mental health records evidence that Plaintiff was psychiatrically stable with no psychotropic needs. (R. 16–17.)

The ALJ also had available and considered another mental health evaluation on June 13, 2012, during which Plaintiff displayed direct eye contact, had a cooperative attitude, used appropriate speech, had an organized thought process, and displayed an euthymic mood and congruent affect. After this evaluation, no mental health disorder was noted. Although Plaintiff was admitted to Meridian on November 8, 2012, after seven days of alcohol binge drinking, at the time of discharge three days later, Plaintiff was feeling much better and did not meet the criteria for additional hospitalization. Her mental health examination at the time of

discharge was unremarkable, and her final diagnosis was depressive disorder and alcohol abuse. (R. 17–18.)

The ALJ then discussed Plaintiff's next mental status evaluation on December 27, 2012. Her mental status examination was unremarkable, her diagnosis was mood disorder, and her recommended course of treatment was individual mental health counseling. The records then reflect that Plaintiff received some services from December 2012 to May 2013, but she was discharged for unexpectedly stopping services. Her final diagnosis was mood disorder.

Plaintiff's last records from Meridian were from July 2013, when Plaintiff was admitted after being psychotically intoxicated on alcohol. Her mental status examination at the time of discharge was unremarkable, and her diagnoses included post-traumatic stress disorder and alcohol abuse. She was prescribed psychotropic medication. (R. 18.)

The ALJ also had available and discussed Plaintiff's records from her multiple incarcerations at the Alachua County Jail in May 2013, July 2013, July 2015, and February 2016. Plaintiff's intake records evidence that Plaintiff appeared stable and was suitable for housing with the general population, although she did receive routine mental health referrals.

Notably, her mental status exams were unremarkable, and her diagnosis was alcohol dependence. (R. 18–19.)

In addition to the wealth of mental health evaluations, the ALJ also had available and relied upon the opinion evidence in the record from Dr. Keith Bauer and Dr. Patricia Clark, state agency consultants, as well as Ms. Theressa Rodriguez, a licensed marriage and family therapist. (R. 19–20.)

Dr. Bauer opined that Plaintiff could understand and recall simple instructions, persist at simple and routine tasks, relate adequately to others, and adapt to most changes and task demands in a routine work setting. He also found that Plaintiff would work best in an environment in which she had limited contact with the public and limited interpersonal demands. The ALJ assigned this opinion significant weight with regard to the limitations in social functioning, but found the other restrictions inconsistent with the evidence in the record. (R. 19.)

Dr. Clark opined that Plaintiff had some mild and moderate restrictions but that Plaintiff could understand and retain simple and most complex instructions and produce concentrated effort to complete tasks. Dr. Clark also noted that Plaintiff appeared to have some social limitations

and that she would do best in settings with limited social contact and demands. She also noted that Plaintiff could adapt over time to routine demands and changes but that she should avoid hazards and arrange transportation. The ALJ gave great weight to this opinion as consistent with the other evidence in the record. (R. 19.)

Ms. Rodriguez wrote two notes regarding her treatment of Plaintiff. Although Ms. Rodriguez wrote in the notes that Plaintiff could not raise her children or work to sustain herself due to her mental illness and needed inpatient treatment and medication, the ALJ gave this opinion only little weight, finding that it was unsupported by the objective medical evidence in the record and was inconsistent with Plaintiff's testimony regarding her daily activities. (R. 20.)

After carefully reviewing all of this available evidence concerning Plaintiff's mental health issues, as well as considering Plaintiff's hearing testimony and other subjective statements regarding the limitations from her impairments, the ALJ concluded the following:

> The claimant alleges disabling impairments, but a review of the longitudinal . . . medical evidence of record does not document complications due to the impairments that would be disabling under governmental guidelines. The claimant alleged significant restrictions in her ability to perform activities of daily living, but the severity of impairment alleged by the claimant is

not supported by objective medical evidence. The medical evidence in this case does document a history of mental health impairments and brief hospitalizations. However, records show that the claimant's symptoms quickly stabilized during inpatient care. The record also demonstrates that the claimant's symptoms are often related to her excessive consumption of alcohol. The record shows the claimant's mental health impairments are successfully addressed with proper treatment.

In addition to the objective medical evidence and treatment, the claimant has several activities that are inconsistent with the total inability to work. At the hearing, the claimant testified to being able to do some household chores, read for five to six hours a day, played computer games on her phone, and interacted with her family on a regular basis. The claimant has no problems taking care of her own personal hygiene needs, and is able to go shopping during non-peak hours.

In summation, the medical records do not support a worsening of the claimant's conditions or any long standing restrictions in her ability to function, other than those noted in the residual functional capacity. Upon evaluation of all the evidence of record and assessment of the claimant's allegations, the undersigned finds the residual functional capacity . . . well supported.

(R. 21.)

In assessing Plaintiff's RFC the ALJ appropriately considered all the evidence in the record and incorporated the findings by the state agency psychologists as well as Plaintiff's subjective complaints regarding her mental health impairments. To account for limitations related to Plaintiff's mental health issues, the ALJ stated in his RFC determination that Plaintiff

has a good ability to read, write, and use numbers. She is able

to understand and retain simple, and most complex, instructions. She should avoid any fast-paced production requirements or quotas. She should avoid others, except for occasional, brief, and superficial interaction with supervisors and the general public. There are no restrictions with the claimant's adaption ability.

(R. 14.)  The Court finds that substantial evidence supports the ALJ's findings.

In sum, the record contained more than sufficient evidence regarding Plaintiff's mental health impairments to enable the ALJ to assess adequately Plaintiff's RFC. The mental health records covered a multi-year period of time, thus providing the ALJ with a sufficient longitudinal mental health record to assess Plaintiff's functional limitations related to her mental health impairments. In conjunction with the opinion evidence in the record and the mental status examinations and evaluations the ALJ was not required to obtain a further consultative examination or obtain other medical evidence. Accordingly, Plaintiff has failed to show that the record was insufficient or that the requisite prejudice existed to establish a need to develop the record further.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 13th day of June 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**